IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS GONZALEZ,<br>    *Plaintiff*, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO. 20-4531 |
| KYLE RUSSELL, *et al.*,<br>    *Defendants*. | :<br>:<br>: |

## **MEMORANDUM**

**PAPPERT, J.**                                                                                                                                                                                                                              **MARCH 22, 2021**

Carlos Gonzalez, a pretrial detainee currently incarcerated at Lehigh County Prison, filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging he has been subjected to cruel and unusual punishment during his incarceration. (ECF No. 2.) Its October 13, 2020 Order, the Court granted Gonzalez leave to proceed *in forma pauperis*. (ECF No. 11.) Gonzalez then filed a series of motions seeking to add claims to his initial Complaint. On December 10, 2020, the Court granted Gonzalez leave to file an amended complaint so that he could bring all of his allegations together in one pleading. Gonzalez filed his Amended Complaint on January 20, 2021.[1] (ECF No. 25.) For the following reasons, the Court will dismiss his Amended Complaint, with the

---

[1] An amended complaint, once submitted to the Court, serves as the governing pleading in the case because an amended complaint supersedes the prior pleading. *See Shahid v. Borough of Darby*, 666 F. App'x 221, 223 n.2 (3d Cir. 2016) (per curiam) ("Shahid's amended complaint, however, superseded his initial complaint." (citing *W. Run Student Hous. Assocs. LLC v. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013)); *see also Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the original pleading and renders the original pleading a nullity. Thus, the most recently filed amended complaint becomes the operative pleading.") (internal citations omitted).

exception of the claims against Mike Daly, Clinton Wambold, Herbert Shrek, Nurse Samantha Scroggins, Officer Muniz, and Officer Keiser.

I

The Amended Complaint, which is broken down into five different "situations" or incidents, raises constitutional claims pursuant to 42 U.S.C. § 1983 against the following Defendants in Situation No. 1: Kyle A. Russell (identified in the Amended Complaint as the Warden), Mike Daly (identified as a Lieutenant, Cert), Joseph Oscellus (identified as a C/O, Cert), Keith Kowal (identified as a Sgt., Cert), Brianna Henry (identified as a C/O, Cert), and Woodward (identified as a C/O, Cert). (ECF No. 25 at 1.)[2] In Situation No. 2, Gonzalez names the following Defendants: Herbert Shrek (identified as a Sgt.), Clinton Wambold (identified as a C/O), and Nurse Samantha Scroggins. (*Id.*) The Defendants named in Situation No. 3 are Mike Salters (identified as a treatment supervisor, grievance coordinator), Doug Mette (identified as a treatment supervisor, grievance coordinator, notary personnel), Josh Leadbetter (identified as a case manager and "pawn" for Doug Mette), and Angel Cristobal (identified as a counselor and "pawn" for Mike Salters). (*Id.*) In Situation No. 4, Gonzalez names Robert McFadden (identified as the Deputy Warden and "pawn" of Kyle A. Russell) as the only Defendant. (*Id.*) In Situation No. 5, Gonzalez names the following Defendants: Clinton Wambold, Officer Keiser, and Officer Muniz. (*Id.*) Gonzalez seeks "$100,000 per situation" noting a total amount sought as $500,000 "for being assaulted, retaliated against, [and] denied medical treatment." (*Id.*)

---

[2] The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system.

A

For Situation 1, Gonzalez avers that on July 20, 2020, he "was sprayed with the O/C"³ during a "peaceful protest" that was organized to grieve issues relating to inadequate amounts of food, inadequate hygiene products, and private access to the law library.⁴ (*Id.* at 2.) After an unsuccessful written grievance attempt, Gonzalez and other inmates decided to cover the doors and windows of their cells. (*Id.*) Gonzalez wanted "to get a prison official down to the RHU so that [they] could explain [their] grievances in person." (*Id.*)

Sergeants Kowal and Mead entered the restricted housing unit but were unable to negotiate. (*Id.*) Gonzalez avers that the incident became violent and hostile when the "CERT" team was activated, which included a group of seven to eight correctional officers dressed in riot gear and gas masks. (*Id.*) According to Gonzalez, Lieutenant Daly approached his cell and directed him to "cuff-up." (*Id.* at 3.) Gonzalez refused because he was in his designated area. (*Id.*) While in his cell, Gonzalez was sprayed with pepper spray by Daly. (*Id.*) Gonzalez says he was removed to the yard, and the nurse was instructed to spray only his face and eyes even though his entire body was engulfed by the spray. (*Id.*) Gonzalez was placed back in his cell, which was not cleaned, and the "pepper spray clung to every square inch of [his] cell" and anything he

---

³ "O/C" stands for oleoresin capsicum, and it is commonly known as pepper spray. *See Torres v. Beverage*, Civ. A. No. 16-962, 2017 WL 1058910, at *1 n.2 (W.D. Pa. March 21, 2017).

⁴ Gonzalez expresses a fear about being "snooped on" by "prison administration" who are "reporting back to the prosecutors" because inmates housed in disciplinary segregation are required to make their requests for case law from memory and place the requests on slips to the treatment supervisor without the opportunity to study case law and legal work. (ECF No. 25 at 2.) This particular allegation is set forth as its own "situation," and addressed more fully below.

touched resulted in a burning sensation. (*Id.*) His entire body burned throughout the night. (*Id.*)

Gonzalez claims he was denied medical treatment by night shift "staff members" and was refused a shower that evening as well as the next day. (*Id.*) Gonzalez asserts that his "rights were violated by Lieutenant Daly, who on orders given by Kyle A. Russell, assaulted [him] and left [him] to deal with the pain long after control was established." (*Id.*)

B

The Defendants named in the second situation are: Sergeant Shrek, Officer Wambold, and Nurse Scroggins. (*Id.* at 1.) Gonzalez states that at approximately 3:30 p.m. on October 10, 2020, he complained of chest and spinal pains.[5] (*Id.* at 3.) Following his medical complaint, Gonzalez's cell door was opened without handcuffs being placed on him. (*Id.*) Gonzalez asserts he was assaulted by Wambold and Shrek while he was sitting on the toilet in his cell. (*Id.*) More specifically, he claims that while he was gasping for air, Wambold, who was being supported by Shrek, tried to cuff him, but Gonzalez refused and requested that Nurse Scroggins be called to attend to him. (*Id.*) Wambold placed his hand on Gonzalez's chest, Gonzalez removed his hand, and then Wambold pushed Gonzalez against the wall. (*Id.*) Gonzalez contends the assault by Wambold and Shrek was captured on camera and was done "in retaliation for upsetting Kyle A. Russell's administration." (*Id.*)

---

[5] By way of background, Gonzalez claims he had withheld his morning medication in an attempt "to get the attention of the proper prison officials" on a separate issue involving his prison account statement. (ECF No. 25 at 4.) Gonzalez, however, does not identify the medication withheld, and it is unclear to the Court whether his failure to take the medicine contributed to his complaints of pain.

4

Gonzalez further avers that Shrek denied him access to Nurse Scroggins by telling him that she had refused to see him when, in fact, Shrek told Scroggins that she would not be permitted to treat Gonzalez because of his behavior. (*Id.*) Gonzalez says his right to adequate medical attention was denied by the prison and the Russell administration. (*Id.*)

C

In situation three, Gonzalez names Salters, Mette, Leadbetter, and Cristobal as Defendants. (*Id.* at 1.) He states prisoners under disciplinary segregation are only permitted to request "specific case laws" from treatment supervisor Mette. (*Id.* at 4.) Gonzalez asserts that if you are not capable of reciting a "specific case law" by its citation, then you are denied your "right to study law and prepare" for your case. (*Id.*)

Gonzalez claims further that the "prison" has been recording and photocopying his requested case laws and sending them to the prosecutor. (*Id.*) Gonzalez avers that he is currently fighting charges of attempted homicide and aggravated assault and speculates that the prosecutor in charge of his case has conspired with Judge Reichley and his public defender.[6] Gonzalez avers that he filed a grievance with respect to this issue on September 16, 2020. (*Id.*) His grievance was denied as frivolous and "they" replaced Salters and Cristobal with Leadbetter and Mette. (*Id.*) There are no further allegations with respect to these individuals and the Court is unclear as to what role, if any, each of these individuals played with respect to Gonzalez's allegations.

---

[6] Gonzalez references an earlier case that he filed with this Court. In that matter, Gonzalez named Judge Douglas G. Reichley, Assistant Prosecutor Lisa Rene Cipoletti, and Attorney Gavin Holihan as Defendants, asserting, *inter alia*, that his constitutional rights were being violated with respect to criminal charges pending against him. *See Gonzalez v. Reichley*, Civ. A. No. 20-4831. This matter was dismissed by the Court on November 9, 2020, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

D

Deputy Warden McFadden is the only Defendant named in the fourth situation. (*Id.* at 1.) On September 30, 2020, McFadden allegedly placed Gonzalez on a shower restriction in retaliation for Gonzalez's filing of a civil rights complaint against Warden Russell. (*Id.* at 7.) It appears from the Amended Complaint that Gonzalez was permitted to shower twice a week. (*Id.*) Gonzalez claims this restriction is contrary to the prison's policy of a minimum of two showers per week and the World Health Organization and CDC's safety precautions to combat the spread of COVID-19. (*Id.*) Gonzalez feels the restriction limiting him to two showers a week subjected him to cruel and unusual punishment during a worldwide pandemic. (*Id.* at 7-8.) Gonzalez filed a grievance concerning this issue on December 7, 2020, and his shower privileges were restored on December 21, 2020. (*Id.*)

E

In situation five, Gonzalez names Officers Wambold, Keiser, and Muniz as Defendants. (*Id.* at 1.) Gonzalez avers that on December 19, 2020, three inmates from 3C-1 unit tested positive for COVID-19, and they were moved to a quarantine unit. (*Id.* at 8.) While inmate Rivera was being transported to quarantine, he passed by Gonzalez's cell and spit in his face. (*Id.*) Gonzalez says Rivera would not have been able to spit on him if the officers who transported Rivera were enforcing the requirement that everyone wear COVID-19 masks outside of their cells. (*Id.*) To Gonzalez, the officers in question failed to protect him, and he was diagnosed with COVID-19 two days later. (*Id.*)

II

The Court previously granted Gonzalez leave to proceed *in forma pauperis* because it appeared that he was incapable of paying the fees to commence this civil action. (ECF No. 11.) Accordingly, 28 U.S.C. § 1915(e)(2)(B) applies, which requires the Court to screen the Amended Complaint and dismiss it if, among other things, it is frivolous or fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Gonzalez is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, that provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A

To state a due process violation based on excessive force, a pretrial detainee must allege facts to plausibly suggest "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any efforts made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Gonzalez asserts that his entire body was sprayed with pepper spray by Daly while he was in his "designated area," *i.e.*, his prison cell, albeit after disobeying an order from Daly. Given the difficulty in ruling on whether the use of force in this context was objectively reasonable at this stage of the litigation, the Court will permit this excessive force claim to proceed.

There are, however, no factual allegations that Sergeant Kowal[7] or Officers Oscellus, Henry, and Woodward were involved in any of the allegedly violative conduct. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Baraka v. McGreevey*,

---

[7] The only factual allegation concerning Sergeant Kowal is that he entered the RHU during the protest in an effort to negotiate, but his attempts at negotiation were unsuccessful. (ECF No. 25 at 2.)

481 F.3d 187, 210 (3d Cir. 2007) (quotations omitted); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Because Gonzalez does not allege how Sergeant Kowal or Officers Oscellus, Henry, and Woodward were involved in the alleged violation of his constitutional rights, the claims against them are not plausible and will be dismissed without prejudice.

Gonzalez's allegations against Russell are also insufficient to state a plausible claim. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Gonzalez does not allege that Russell, with deliberate indifference to the consequences, maintained a policy, practice or custom that resulted in the conduct that allegedly violated Gonzalez's constitutional rights, nor does he allege that Russell participated in the alleged improper conduct. Instead, Gonzalez claims Daly assaulted

9

him "on orders given by Kyle A. Russell." (ECF No. 25 at 2.) This allegation against Russell is conclusory and does not allege enough facts to support a plausible claim that Russell's actions resulted in the conduct that allegedly violated Gonzalez's constitutional rights. Accordingly, the claims against Russell will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

B

Gonzalez alleges Wambold and Shrek entered his cell following his request for medical attention, and then assaulted him while he sat on the toilet. (ECF No. 25 at 3.) Gonzalez further claims that he was denied medical attention following the assault and that the assault was done "in retaliation for upsetting Kyle A. Russell's administration." (*Id.*) Gonzalez's allegation that Wambold and Shrek assaulted him while he was in his cell is sufficient to allege a plausible excessive force claim. *See Olick v. Pennsylvania*, 739 F. App'x 722, 725 (3d Cir. 2018) (per curiam) (allowing excessive force claim to proceed where "Olick alleged that Maracinni shoved him across the floor, causing an injury to his shoulder that required medical attention").

Gonzalez further avers that Shrek denied him medical treatment by denying him access to Nurse Scroggins. (ECF No. 25 at 3.) To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[8] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Deliberate indifference is

---

[8] As it appears that Gonzalez was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19,

10

properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Gonzalez's allegation that he was denied medical treatment for his chest and spinal pains and difficulty breathing is sufficient to allege a plausible claim at this stage of the case against Wambold, Shrek, and Scroggins.

However, Gonzalez's allegation that the assault by Wambold and Shrek was in retaliation "for upsetting . . . Russell's administration," is conclusory and does not support a retaliation claim. In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). Although Gonzalez mentions the filing of a civil action against Russell, he does not allege the timing of that

---

2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

filing relative to the assault, nor does he state that either Wambold or Shrek were aware of any civil complaint against Russell. This claim is accordingly dismissed.

## C

Gonzalez claims prisoners under disciplinary segregation are only permitted to request "specific case laws," and if you are not capable of reciting a "specific case law" by its citation, then you are denied your "right to study law and prepare" for your case. (ECF No. 25 at 5.) The Court understands Gonzalez to be asserting a claim of denial of access to the prison law library.

A claim asserting restrictions on access to the prison law library is considered a First Amendment "access-to-the-courts" claim. *See, e.g., Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz*, 532 F. App'x at 63 (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "non frivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint."

*Id.* Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Gonzalez fails to tie any allegation that his law library access was restricted during his period in segregation to the actual loss of a nonfrivolous and arguable claim. Moreover, Gonzalez is currently represented by counsel with respect to the criminal charges pending against him.[9] Accordingly, this claim is not plausible and will be dismissed. The dismissal will be without prejudice and Gonzalez may amend the claim if he is able to identify a nonfrivolous and arguable legal claim he lost due to the restriction on his access to the law library.

Gonzalez also asserts that the "prison" has been photocopying his requested cases and sending them to the prosecutor in charge of his case, and that he has filed a grievance on this issue, which was denied as frivolous. (ECF No. 25 at 6-7.) Gonzalez further asserts that "they" replaced Salters and Cristobal with Leadbetter and Mette. (*Id.*) There are no further allegations with respect to any of these individuals and the Court is unclear as to what role, if any, each of these individuals played with respect to these allegations.

---

[9] According to the criminal docket for the Court of Common Pleas of Lehigh County, Gonzalez has been charged with one count of aggravated harassment by a prisoner with an offense date listed as August 28, 2020. *See Commonwealth v. Gonzalez*, Docket No. CP-39-CR-0002526-2020 (Lehigh Cty. Court of Common Pleas). It further appears from the criminal docket that Robert E. Sletvold, Esquire is currently representing Gonzalez in these criminal proceedings. (*Id.*)

13

Gonzalez's use of the terms "prison" and "they" does not attribute any conduct to any individual defendant. *See Lawal v. McDonald*, 546 F. App' x 107, 113 (3d Cir. 2014) (pleading that relied on "repeated and collective use of the word 'Defendants'" was ambiguous about each Defendant's role in the events giving rise to plaintiff's claims). As noted above, the personal involvement of each defendant in the alleged constitutional violation is a required element in a § 1983 action, and, therefore, a plaintiff must allege the role each defendant played in the events and occurrences giving rise to the claims. *Rode*, 845 F.2d at 1207; *Baraka*, 481 F.3d at 210 (quotations omitted); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Gonzalez has made no allegations describing how any specific individuals were personally responsible for any alleged photocopying of his legal research. His references to "prison" and "they" are insufficient to put anyone on notice to prepare a defense, and these allegations do not ensure that the Court is sufficiently informed of the facts to determine the relevant legal issues. Accordingly, this claim is not plausible and will be dismissed without prejudice.

Moreover, to the extent Gonzalez alleges a violation of his rights with respect to the denial of his grievance, claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, if

14

Gonzalez is attempting to raise claims based solely on the denial of his grievances, they are not plausible and will be dismissed with prejudice.

D

Gonzalez alleges McFadden placed him on a shower restriction from September 30, 2020 through December 21, 2020 in retaliation for filing a civil rights complaint against Russell. (ECF No. 25 at 7.) Gonzalez claims this restriction, which limited him to two showers per week, constituted cruel and unusual punishment during a worldwide pandemic. (*Id.* at 7-8.) This claim fails to state plausible constitutional violations.

The Due Process Clause of the Fourteenth Amendment governs claims involving conditions of confinement brought by pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter,* 501 U.S. 295, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn

that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Gonzalez's allegations that he was only permitted to shower twice a week for a period of approximately three months are insufficient to satisfy either the objective or subjective components of a due process claim. Courts have held that the Fourteenth Amendment does not require prisons to allow pretrial detainees daily shower access. *See, e.g., Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010) ("Fortune complained of his inability to adequately shower and exercise for a period of fifteen days. Although it is not clear how many times Fortune believes that he should have been permitted to engage in those activities in addition to the time he was already given to do so, he does not allege that he suffered any harm as a result of the denial of additional showers and exercise."); *Coleman v. Hodges*, Civ. A. No. 18-1152, 2018 WL 6618459, at *5 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) ("To the extent that Plaintiff claims his mere placement in the RHU and the mere imposition of the restrictions regarding a mattress, showers and exercise for four days constituted 'punishment' as prohibited by *Bell v. Wolfish*, he fails to comprehend the meaning of 'punishment' as used in *Bell* and in the Fourteenth Amendment context concerning pre-trial detainees."); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 471 (E.D. Pa. 2007) (plaintiff failed to state a

constitutional claim based on allegations "that he was denied the means to maintain a clean cell, he was not permitted to shower regularly, and he was shackled everywhere he went"). Because Gonzalez does not allege that he suffered any harm from the alleged inability to shower, the deprivation is not sufficiently serious, and the claim is not plausible.

Gonzalez's assertion that he was placed on a shower restriction in retaliation for filing a civil rights complaint against Russell is also not plausible. Gonzalez does not allege the timing of the filing of the civil complaint against Russell relative to the shower restriction, nor does he aver that McFadden was aware of the complaint filed against Russell. There are no factual assertions, other than Gonzalez's own conclusory statement, to support Gonzalez's contention that the restriction was placed as a result of the civil case against Russell. Accordingly, this claim will be dismissed because it is not plausible as pled.

E

Gonzalez alleges that while Wambold, Muniz, and Keiser transported an unmasked inmate who had recently tested positive for COVID-19, they passed by Gonzalez's cell and the infected inmate spit in his face. (ECF No. 25 at 8.) Gonzalez was diagnosed with COVID-19 two days later. (*Id.*) These allegations apparently raise a failure to protect claim against these officers. To state a claim under § 1983 against a prison official for failure to protect an inmate, a plaintiff must plead facts that show: "(1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Farmer*, 511 U.S. at 834.

17

Given the nature of COVID-19, and Gonzalez's assertions that no one was permitted to leave their cell without a face mask, Gonzalez's allegations are sufficient for now to establish a plausible claim of failure to protect against Wambold, Muniz, and Keiser.

IV

The Court will dismiss Gonzalez's claims against Russell, Oscellus, Kowal, Henry, Woodward, Salters, Mette, Leadbetter, Cristobal, and McFadden without prejudice. Gonzalez will be permitted to proceed on his excessive force claims against Daly, his excessive force and deliberate indifference claims against Wambold, Shrek, and Scroggins, and his failure to protect claims against Wambold, Muniz, and Keiser. Any claims based on grievances will be dismissed with prejudice. Gonzalez may file an amended complaint in the event that he seeks to amend his claims against Russell, Oscellus, Kowal, Henry, Woodward, Salters, Mette, Leadbetter, Cristobal, and McFadden. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). If he chooses not to file an amended complaint, the Court will direct service on Defendants Daly, Wambold, Shrek, Scroggins, Muniz, and Keiser. An appropriate Order follows.

                        **BY THE COURT:**

                         */s/ Gerald J. Pappert*
                        **GERALD J. PAPPERT, J.**