IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS GONZALEZ,<br>    *Plaintiff*,<br><br>  v.<br><br>MIKE DALY, *et al.*,<br>    *Defendants*. | CIVIL ACTION<br>NO. 20-4531 |

PAPPERT, J.                             December 29, 2021

## MEMORANDUM

  *Pro se* plaintiff Carlos Gonzalez alleges Mike Daly, Clinton Wambold, Herbert Shrek, Officer Muniz, and Officer Keiser – all current and/or former correctional officers at Lehigh County Jail – used excessive force against him and subjected him to conditions of confinement that violated his constitutional rights. Defendants move to dismiss Gonzalez's Second Amended Complaint. Gonzalez filed a response to Defendants' motion, a separate motion to strike the motion to dismiss and three motions seeking leave to further amend his Complaint.

  The Court grants Defendants' motion in part and denies it in part. Gonzalez may proceed with his excessive force claims against Daly, Wambold and Shrek. He also is granted leave to amend his claims that Shrek denied him access to medical care and that Wambold, Muniz and/or Keiser failed to protect him from contracting COVID-19. Gonzalez's motions are denied in all other respects.

I

A

  Gonzalez claims Daly used excessive force against him in July 2020 when he was

sprayed with a pepper spray substance following a "peaceful protest" of conditions of confinement with a group of other inmates. (Second Am. Compl., ECF 33, at ECF p. 1.) Gonzalez obstructed his cell's door and windows "to get a prison official" to come so he "could explain [his] grievances in person." (*Id.*) When responding officials "were unable to negotiate," the "Cert Team was activated." (*Id.*) Daly approached his cell and demanded that Gonzalez "cuff-up." (*Id.* at ECF p. 2.) Gonzalez refused and claims he "was posing no threat to anyone or any property." (*Id.*) Daly then sprayed "the O/C fogger into [his] cell" and removed him to an indoor "yard" for two minutes, "instruct[ing]" an unnamed nurse to spray Gonzalez in only his face and eyes. (*Id.*) Gonzalez alleges his "entire body was engulfed by the volatile peppers" and Daly then placed him back into the same cell where he had been "assaulted" with pepper spray before it was cleaned. (*Id.*)

B

Gonzalez claims Wambold and Shrek used excessive force against him and were deliberately indifferent in October 2020 when he was suffering from a panic attack and they sought to place him in handcuffs. (*Id.* at ECF p. 4-7.) He alleges he "held onto [his] medication" that morning to protest not receiving his monthly financial statements. (*Id.* at ECF p. 4.) That afternoon, his "cell door was opened without administering handcuffs," allegedly "against policy." (*Id.*) He alleges Wambold then "tried to administer cuffs" while he sat on the toilet, but Gonzalez refused to cooperate and instead asked for medical attention for his shortness of breath. (*Id.* at ECF p. 5.) Wambold then put his hand on Gonzalez's chest and Gonzalez removed it. (*Id.*) In response, Wambold pushed Gonzalez against the wall. (*Id.*) Gonzalez alleges Wambold and Shrek then assaulted him "in retaliation for filing" a complaint against another

2

corrections official.[1] (*Id.*) Gonzalez also contends Shrek denied him access to adequate medical attention for his inability to breathe. (Second Am. Compl., at ECF p. 5-6.)

C

Gonzalez claims Wambold, Muniz and Keiser failed to protect him during a December 2020 incident when another inmate who was being escorted through the jail spit in Gonzalez's face, causing him to contract COVID-19. (*Id.* at ECF p. 8.) He alleges Keiser and Wambold responded by approaching his door and asking, "what do I want them to do about it?" (*Id.*) Gonzalez maintains he tested positive for the virus two days after the inmate spit on him and alleges the officers did not enforce the requirement that "all humans must wear a COVID-19 mask once out of their rooms/cells." (*Id.* (emphasis omitted).)

II

Defendants move to dismiss each of Gonzalez's claims. To survive their Rule 12(b)(6) motion, Gonzalez's Second Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Because Gonzalez is *pro se*, the Court construes his allegations liberally and applies "the relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Still, he must allege enough facts to "nudge" his claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Facially plausible claims plead "factual content that allows the court to draw the

---

[1] Gonzalez's allegation that the assault was retaliatory is conclusory and does not state a plausible First Amendment retaliation claim.

reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Well-pleaded factual allegations are entitled to the presumption of truth.  *Id.* at 679.  "Conclusory assertions of fact and legal conclusions are not . . . ." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal citations omitted).

III

To withstand dismissal, Gonzalez "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Gonzalez purports to state claims for violations of his Eighth Amendment rights under 42 U.S.C. § 1983.  Gonzalez alleges he was a pretrial detainee at the time of the events in question[2] (Second Am. Compl., ECF 33, at ECF p. 2.), the Fourteenth Amendment governs his claims instead of the Eighth.  *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

"[T]he substantive due process guarantees afforded detainees . . . are at least as robust as Eighth Amendment protections afforded prisoners[.]"  *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020); *see also Montgomery v. Ray*, 145 F. App'x 738, 740 (3d Cir. 2005) ("[T]he Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.").  "Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual'

---

[2]   Defendants describe him as "incarcerated" and do not address whether he was a pretrial detainee or a sentenced inmate.  (Defs.' Br., ECF 45-1 at 1.)

4

under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).

A

A pretrial detainee claiming a substantive due process violation based on excessive force "must show . . . only that the officers' use of that force was objectively unreasonable" and not "that the officers were subjectively aware that their use of force was unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 391-92, 400-402 (2015); *see also Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) ("[T]he Fourteenth Amendment . . . exclusively employs an objective-reasonableness standard.") Objectively unreasonable force is "not rationally related to a legitimate nonpunitive government purpose." *Id.* at 398.  To determine whether force used against a pretrial detainee was objectively unreasonable, the Court considers a corrections officer's knowledge and perspective and "the legitimate interests in managing a jail, acknowledging . . . that deference to policies and practices needed to maintain order and institutional security is appropriate." *Id.* at 399-400.  In addition, the Court looks to:

> (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting.

*Robinson v. Danberg*, 673 F. App'x 205, 209 (3d Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397).  "The touchstone of a due process claim is whether the application of force was punitive." *Id.* at 201.

Defendants do not argue Gonzalez has alleged insufficient facts to show their use of force in either the July or October 2020 incidents was objectively unreasonable. Instead they contend "there is no support for the notion that [their] alleged actions

5

were so egregious and possessed the necessary malicious and sadistic nature to support valid claims." (Defs.' Br. at 5.) However, "the relevant standard is objective, not subjective," because Gonzalez was a pretrial detainee and he is not required to show Defendants acted "maliciously and sadistically to cause harm" for his excessive force claims to survive dismissal. *Kingsley*, 576 U.S. at 395, 399.

With respect to the July 2020 incident, Gonzalez's allegation that Daly "assaulted" him with pepper spray, engulfing his "entire body" by "spray[ing] the O/C fogger into [his] cell," when he "was posing no threat to anyone or any property" (Second Am. Compl. at 2) is enough to permit his claim to proceed. A reasonable fact finder could conclude Daly's conduct was objectively unreasonable if the allegation that Gonzalez posed no threat at the time of assault is proven.

Gonzalez's allegations that Wambold "pushed" him against his cell wall with Shrek's assistance in the October 2020 "assault" while he was "wheezing for breath" (*Id.* at 5) are also enough, if only just so, to plausibly allege an excessive force claim. Although Gonzalez alleges he was not cooperating with Wambold's request at the time, he maintains his failure to do so was because he was unable to breathe. "It is not clear that any force was necessary here, as it is not clear that [Gonzalez] was making any type of physical threat" despite his non-cooperation. *Aruanno v. Maurice*, No. 18-1306, 2019 WL 5597653, at *2 (3d Cir. Oct. 30, 2019). Viewing the facts in the light most favorable to Gonzalez, this claim may proceed.

B

The standard for Gonzalez's failure-to-protect claim is deliberate indifference. *See Palakovic v. Wetzel*, 854 F.3d 209, 223–24 (3d Cir. 2017) (applying the deliberate indifference standard to detainee failure to protect from suicidal action claim, but

noting a detainee may prove defendant knew (or should have been known) of the detainee's particular vulnerability to suicide); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment."). The Third Circuit also continues to use the deliberate indifference standard to evaluate pretrial detainees' claims regarding access to medical care. *Peters v. Brown*, 793 F. App'x 118, 123 (3d Cir. 2019) (per curiam) ("We have found it constitutionally sufficient . . . to analyze pretrial detainees' claims of inadequate medical care under the familiar deliberate indifference standard."); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether the objective unreasonableness standard governs pretrial detainee's claims for medical mistreatment after *Kingsley*). *But see Montgomery v. Ray*, 145 F. App'x 738, 739 (3d Cir. 2005) (suggesting the appropriate standard is whether inadequate medical treatment "amounted to punishment prior to an adjudication of guilt"); *see also McFadden v. Dalmasi*, No. 17-5787, 2019 WL 6218220, at *6 (E.D. Pa. Nov. 21, 2019), aff'd, 837 F. App'x 135 (3d Cir. 2020) (explaining the standard for evaluating pretrial detainees' claims of inadequate medical treatment "is not entirely clear").

"[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It requires "obduracy and wantonness, not inadvertence or error in good faith . . . ." *Whitley v. Albers* 475 U.S. 312, 319 (1986). It is "subjective, not objective . . . meaning . . . it is not sufficient that the official should have been aware" of the existence of the excessive risk. *Mammana v. Federal Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Woloszyn v. Cnty. of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (further citations omitted)). To plead a Defendant's

7

"deliberate indifference," Gonzalez must allege facts showing the Defendant "knowingly and unreasonably disregard[ed] an objectively intolerable risk of harm." *Farmer*, 511 U.S. at 846.

1

Gonzalez has not sufficiently alleged Shrek was deliberately indifferent to a serious medical need when he denied Gonzalez access to medical care during the October 2020 incident. Gonzalez must plausibly allege that Shrek "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety'" to survive Defendants' motion. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer*, 511 U.S. at 837); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (holding deliberate indifference may be shown where an officer "den[ies] reasonable requests for medical treatment . . . and such denial exposes the inmate to undue suffering or the threat of tangible residual injury"). Shrek must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." *Farmer*, 511 U.S. at 837.

Gonzalez has alleged no facts from which it could be plausibly inferred that Shrek was aware he had a serious medical need. A medical need is serious if it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Gonzalez alleges he was "gasping for breath," "having difficulties breathing" and "not able to breath[e]." (Second Am. Compl., at 5.) But he does not explain how long he had trouble breathing, whether he was suffering from other symptoms or otherwise allege enough

8

facts to show Shrek must have been aware Gonzalez's breathing difficulties were causing undue suffering or posed a threat of residual injury. Even viewing the facts in the light most favorable to Gonzalez, more context is required to state a constitutional claim.

2

To proceed with his claim that Wambold, Muniz and/or Keiser failed to protect him from contracting COVID-19, Gonzalez must allege facts to show (1) he was subjected to conditions posing a substantial risk of serious harm; (2) the relevant Defendant was deliberately indifferent to that risk; and (3) the relevant Defendant's deliberate indifference harmed him. *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).). The Constitution bars deliberate indifference to conditions that "pose an unreasonable risk of serious damage to . . . future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *see also id.* at 33 (holding the Eighth Amendment protects against conditions of confinement that include exposure to "infectious maladies such as hepatitis" or "dysentery" even where "it is not alleged that the likely harm [will] occur immediately and even though the possible infection might not affect all of those exposed"). However, "a detainee asserting deliberate indifference based on exposure to COVID-19 must still establish that the Defendant had the requisite mental state, which is akin to recklessness." *Jones v. Ellis*, No. 21-13625, 2021 WL 5015921, at \*2 (D.N.J. Oct. 28, 2021) (citing *Hope*, 972 F.3d at 330.)

Gonzalez's allegations show Wambold, Muniz and/or Keiser were negligent at most by not enforcing the institution's mask policy. "[A] failure to eliminate all risk" from COVID-19 does not establish deliberate indifference. *Hope v. Warden York Cnty.*

9

*Prison*, 972 F.3d 310, 330 (3d Cir. 2020). Gonzalez has not stated a "detention as punishment claim" based on the failure to protect him from exposure to COVID-19 because he has alleged no facts to suggest any Defendant recklessly failed to enforce the mask policy or that their failure to require the other inmate to wear a mask was "meant to punish . . . ." *Jones*, 2021 WL 5015921, at *2; *see Bistrian*, 696 F.3d at 373 ("[A]" particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.") (citation and internal quotation omitted). He has not shown any Defendant acted with the required "culpable state of mind . . . ." *Farmer* 511, U.S. at 834.

IV

Gonzalez seeks leave to file a Third Amended Complaint. (ECF 44, 49 and 50.) A district court considering a 12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

If Gonzalez is able to allege sufficient facts to correct the deficiencies identified in this Opinion, he may amend his Second Amended Complaint *only* with respect to his claims that: (1) Shrek was deliberately indifferent to a serious medical need when he denied Gonzalez access to medical care during the October 2020 incident; and (2) Wambold, Muniz and/or Keiser acted with deliberate indifference in failing to

10

protect him from contracting COVID-19. The Court cannot say that it would be futile to give Gonzalez one final chance to set forth the facts required to support these claims. Any Third Amended Complaint must be complete, alleging all claims that Gonzalez wishes to pursue including those that the Court has not dismissed in this Opinion (i.e., his excessive force claims – against Daly for the July 2020 incident and against Wambold and Shrek for the October 2020 incident).

Gonzalez's motions for leave to amend are otherwise denied, as is his motion to strike Defendants' motion.[3] If Gonzalez files a Third Amended Complaint, it may not allege new claims or claims against any new defendant. If the Court does not receive a Third Amended Complaint from Gonzalez on or before the deadline in the accompanying Order, this action will proceed on the excessive force claims that remain.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[3] In his motions seeking leave to file a Third Amended Complaint (ECF 44, 49 and 50), Gonzalez complains about several other matters, including alleged tampering with his legal mail. His motion to strike Defendants' motion complains about a lack of access to legal material (among other things). (ECF 47.) This lawsuit is not the appropriate venue to assert new and unrelated claims.